**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION**

**KIMBERLY MICHELE LIVESAY,**

        **Plaintiff,**                    **CIVIL ACTION NO. 17-cv-14214**

        **v.**                             **DISTRICT JUDGE ARTHUR J. TARNOW**

**COMMISSIONER OF**            **MAGISTRATE JUDGE MONA K. MAJZOUB**
**SOCIAL SECURITY,**

        **Defendant.**
_____/

**REPORT AND RECOMMENDATION**

    Plaintiff Kimberly Michele Livesay seeks judicial review of Defendant Commissioner of Social Security's determination that she is not entitled to social security benefits for her physical and mental impairments under 42 U.S.C. § 405(g). (Docket no. 1.) Before the Court are Plaintiff's Motion for Summary Judgment (docket no. 13) and Defendant's Motion for Summary Judgment (docket no. 16). Plaintiff has also filed a Reply to Defendant's Motion for Summary Judgment. (Docket no. 19.) The motions have been referred to the undersigned for a Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1)(B). (Docket no. 4.) The undersigned has reviewed the pleadings, dispenses with a hearing pursuant to Eastern District of Michigan Local Rule 7.1(f)(2), and issues this Report and Recommendation.

**I.    RECOMMENDATION**

    For the reasons that follow, it is recommended that Plaintiff's Motion for Summary Judgment (docket no. 13) be **DENIED** and Defendant's Motion for Summary Judgment (docket no. 16) be **GRANTED**.

## II. PROCEDURAL HISTORY

Plaintiff filed an application for a period of disability and disability insurance benefits on April 13, 2015, alleging that she has been disabled since March 10, 2013, due to degenerative osteoarthritis in her left knee, debilitating migraine headaches, costochondritis, a bad lower back, and anxiety attacks. (TR 127-33, 146.) The Social Security Administration denied Plaintiff's claims on August 3, 2015, and Plaintiff requested a *de novo* hearing before an Administrative Law Judge (ALJ). (TR 58-71, 80-81.) On September 29, 2016, Plaintiff amended her alleged onset date to April 26, 2013, and appeared with a representative and testified at a hearing before ALJ Henry Perez, Jr. (TR 33-57, 144.) The ALJ subsequently issued an unfavorable decision on November 22, 2016, and the Appeals Council declined to review the ALJ's decision. (TR 1-6, 18-28.) Plaintiff then commenced this action for judicial review, and the parties filed cross dispositive motions, which are currently before the Court.

## III. HEARING TESTIMONY AND MEDICAL EVIDENCE

Plaintiff (docket no. 13 at 7-14) and the ALJ (TR 22-27) have set forth factual summaries of Plaintiff's medical record and the hearing testimony. Defendant adopts the ALJ's recitation of the facts. (Docket no. 16 at 4.) Having conducted an independent review of Plaintiff's medical record and the hearing transcript, the undersigned finds that there are no material inconsistencies between Plaintiff's and the ALJ's recitations of the record. Therefore, in lieu of re-summarizing this information, the undersigned will incorporate the above-cited factual recitations by reference and will also make references and citations to the record as necessary to address the parties' arguments throughout this Report and Recommendation.

**IV.     ADMINISTRATIVE LAW JUDGE'S DETERMINATION**

The ALJ found that Plaintiff did not engage in substantial gainful activity during the period from the amended alleged onset date of April 26, 2013, through the date last insured of March 31, 2016, and that Plaintiff suffered from the following severe impairments: migraine headaches, osteoarthritis of the left knee, degenerative disc disease of the lumbar spine, and obesity. (TR 20.) The ALJ also found that Plaintiff had no severe mental impairments through the date last insured. (TR 20-21.) Next, the ALJ determined that Plaintiff's impairments did not meet or medically equal the severity of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. (TR 21.) The ALJ then found that, through the date last insured, Plaintiff had the following residual functional capacity (RFC):

> [C]laimant had the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) except occasionally climb ramps or stairs; occasionally climb ladders, ropes, or scaffolds; and occasionally balance, stoop, kneel, crouch, and crawl.

(TR 21-26.) Subsequently, in reliance on the vocational expert's (VE's) testimony, the ALJ determined that Plaintiff was capable of performing a significant number of jobs in the national economy. (TR 27.) Therefore, the ALJ found that Plaintiff was not disabled under the Social Security Act at any time from April 26, 2013, through the date last insured of March 31, 2016. (TR 18, 27-28.)

**V.     LAW AND ANALYSIS**

   **A.     Standard of Review**

Pursuant to 42 U.S.C. § 405(g), this Court has jurisdiction to review the Commissioner's final decisions. Judicial review of the Commissioner's decisions is limited to determining whether his findings are supported by substantial evidence and whether he employed the proper legal standards. *See Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Walters v. Comm'r*, 127 F.3d

3

525, 528 (6th Cir. 1997). Substantial evidence is more than a scintilla but less than a preponderance; it is "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson*, 402 U.S. at 401 (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)); *Walters*, 127 F.3d at 528. It is not the function of this Court to try cases *de novo*, resolve conflicts in the evidence, or decide questions of credibility. *See Brainard v. Sec'y of Health and Human Servs.*, 889 F.2d 679, 681 (6th Cir. 1989); *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984).

In determining the existence of substantial evidence, the court must examine the administrative record as a whole. *See Kirk v. Sec'y of Health and Human Servs.*, 667 F.2d 524, 536 (6th Cir. 1981), *cert. denied*, 461 U.S. 957 (1983). If the Commissioner's decision is supported by substantial evidence, it must be affirmed, even if the reviewing court would decide the matter differently, *Kinsella v. Schweiker*, 708 F.2d 1058, 1059 (6th Cir. 1983), and even if substantial evidence also supports the opposite conclusion. *See Her v. Comm'r*, 203 F.3d 388, 389-90 (6th Cir. 1999); *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (en banc) (noting that the substantial evidence standard "presupposes that there is a zone of choice within which the decisionmakers can go either way, without interference by the courts"). "But '[a]n ALJ's failure to follow agency rules and regulations denotes a lack of substantial evidence, even where the conclusion of the ALJ may be justified based upon the record.'" *Gayheart v. Comm'r of Soc. Sec.*, 710 F.3d 365, 374 (6th Cir. 2013) (quoting *Cole v. Astrue,* 661 F.3d 931, 937 (6th Cir. 2011)).

  **B.**  **Framework for Social Security Determinations**

Plaintiff's Social Security disability determination was made in accordance with a five-step sequential analysis. In the first four steps, Plaintiff was required to show that:

  (1)  Plaintiff was not presently engaged in substantial gainful employment; and

>   (2)  Plaintiff suffered from a severe impairment; and
>
>   (3)  the impairment met or was medically equal to a "listed impairment;" or
>
>   (4)  Plaintiff did not have the residual functional capacity (RFC) to perform relevant past work.

*See* 20 C.F.R. § 404.1520(a)-(f). If Plaintiff's impairments prevented Plaintiff from doing past work, the Commissioner, at step five, would consider Plaintiff's RFC, age, education, and past work experience to determine if Plaintiff could perform other work. If not, Plaintiff would be deemed disabled. *See id.* at § 404.1520(g). The Commissioner has the burden of proof only on "the fifth step, proving that there is work available in the economy that the claimant can perform." *Her*, 203 F.3d at 391. To meet this burden, the Commissioner must make a finding "supported by substantial evidence that [the claimant] has the vocational qualifications to perform specific jobs." *Varley v. Sec'y of Health and Human Servs.*, 820 F.2d 777, 779 (6th Cir. 1987). This "substantial evidence" may be in the form of vocational expert testimony in response to a hypothetical question, "but only 'if the question accurately portrays [the claimant's] individual physical and mental impairments.'" *Id.* (citations omitted).

    **C.**    **Analysis**

The Social Security Act authorizes "two types of remand: (1) a post judgment remand in conjunction with a decision affirming, modifying, or reversing a decision of the [Commissioner] (a sentence-four remand); and (2) a pre-judgment remand for consideration of new and material evidence that for good cause was not previously presented to the [Commissioner] (a sentence-six remand)." *Faucher v. Sec'y of Health and Human Servs.*, 17 F.3d 171, 174 (6th Cir. 1994) (citing 42 U.S.C. § 405(g)). Under a sentence-four remand, the Court has the authority to "enter upon the pleadings and transcript of the record, a judgment affirming, denying, or reversing the decision of the [Commissioner], with or without remanding the cause for a hearing. 42 U.S.C. § 405(g).

Where there is insufficient support for the ALJ's findings, "the appropriate remedy is reversal and a sentence-four remand for further consideration." *Morgan v. Astrue*, 10-207, 2011 WL 2292305, at *8 (E.D. Ky. June 8, 2011) (citing *Faucher*, 17 F.3d at 174).

Plaintiff asserts that her chronic migraine headaches are primarily at issue in this case. (Docket no. 13 at 7.) Plaintiff further asserts that this case should be reversed or remanded pursuant to sentence four because the ALJ (1) "erred in his evaluation of [the] treating physician opinion, where the treating physician opinion supports disability, and the partial weight the [ALJ] gave to this opinion is not reflected in his finding concerning residual functional capacity;" and (2) "erred where he appeared to accept the frequency of [Plaintiff's] headaches but his finding of residual functional capacity does not reflect the limitations resulting from her symptoms." (*Id*. at 3, 16-26.)

### 1. The ALJ's Assessment of the Treating Physician's Opinion

Plaintiff argues that the ALJ failed to properly evaluate the opinion of her treating physician, John R. Crump, M.D., where the ALJ gave "some weight" to Dr. Crump's opinion, but the ALJ's analysis does not support the weight given, nor is the weight given reflected in the ALJ's RFC finding. (Docket no. 13 at 17-20.) It is well settled that the opinions of treating physicians are generally accorded substantial deference. In fact, the ALJ must give a treating physician's opinion complete deference if it is supported by clinical and laboratory diagnostic evidence and it is not inconsistent with the other substantial evidence in the record. 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2). When an ALJ determines that a treating source's medical opinion is not controlling, he must determine how much weight to assign that opinion in light of several factors: (1) length of the treatment relationship and the frequency of examination; (2) nature and extent of the treatment relationship; (3) supportability of the opinion; (4) consistency of the opinion with the

6

record as a whole; (5) specialization of the treating source; and (6) other factors.  20 C.F.R. §§ 404.1527(c)(2)-(6), 416.927(c)(2)-(6).

There is no *per se* rule that requires an articulation of each of the six regulatory factors listed in 20 C.F.R. §§ 404.1527(c)(2)-(6), 416.927(c)(2)-(6). *Norris v. Comm'r of Soc. Sec.*, No. 11-CV-11974, 2012 WL 3584664, at *5 (E.D. Mich. Aug. 20, 2012) (citing *Tilley v. Comm'r of Soc. Sec.*, 394 F. App'x 216, 222 (6th Cir. 2010)).  An ALJ's failure to discuss the requisite factors may constitute harmless error (1) if "a treating source's opinion is so patently deficient that the Commissioner could not possibly credit it;" (2) "if the Commissioner adopts the opinion of the treating source or makes findings consistent with the opinion;" or (3) "where the Commissioner has met the goal of [§ 1527(c)]—the provision of the procedural safeguard of reasons—even though she has not complied with the terms of the regulation."  *Nelson v. Comm'r of Soc. Sec.*, 195 F. App'x 462, 470 (6th Cir. 2006) (quoting *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 547 (6th Cir. 2004)).

The Commissioner requires its ALJs to "always give good reasons in [their] notice of determination or decision for the weight [they] give [a] treating source's opinion."  20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2).  Those good reasons must be "supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." *Wilson*, 378 F.3d at 544 (quoting Social Security Ruling (SSR) 96-2p, 1996 WL 374188, at *5 (1996)).  The district court should not hesitate to remand when the Commissioner has failed to identify the weight assigned to a treating physician's opinion and provide good reasons for that weight.  *See Cole v. Astrue*, 661 F.3d 931, 939 (6th Cir. 2011) ("This Court has made clear that '[w]e do not hesitate to remand when the Commissioner has not provided 'good reasons' for the

7

weight given to a treating physician's opinion and we will continue remanding when we encounter opinions from ALJ's that do not comprehensively set forth the reasons for the weight assigned to a treating physician's opinion.") (citing *Hensley v. Astrue*, 573 F.3d 263, 267 (6th Cir. 2009)).

The ALJ summarized and assessed Dr. Crump's opinion as follows:

Dr. John Crump, Claimant's primary care physician, completed a questionnaire in September 2016 concerning Claimant's impairments, treatment, and functional abilities/limitations (see Exhibit 9F). He indicated that Claimant had frequent intractable migraines that failed multiple preventive treatments as well as osteoarthritis of the left knee. He indicated that the migraines were severe (prevents all activity) and occurred 4-8 times per month for 24-72 hours at a time. He noted that bright lights, stress, and weather changes could trigger a headache and that routine physical activity, coughing, and light could make them worse. He marked that lying down, medication, darkness, and use of a cold park [sic] made them better. He estimated that she could stand/walk 15 minutes at one time for a total of 2 hours in an 8-hour workday and sit 4 hours at one time for a total of 8 hour[s] in an 8-hour workday. Dr. Crump estimated she could lift up to 10 pounds occasionally and carry up to 5 pounds occasionally. He expressed that she should never climb, crouch, kneel, or crawl, could occasionally balance, and could frequently balance [sic, bend?] at the waist. He also opined that she should never be exposed to environmental conditions such as heights, moving machinery, temperature extremes, chemicals, dust, noise, fumes, humidity, or vibration. Lastly, Dr. Crump opined that Claimant would require a minimum of 20 minutes of rest every hour and would likely be absent from work more than 4 times per month as a result of her impairments or treatment.

These opinions are given some weight but not great weight. Dr. Crump is Claimant's primary care physician and treated her on a number of occasions during the alleged period of disability prior to the date last insured. However, the evidence as a whole does not support the extreme degree of limitations he identified. For example, as discussed above, his own notes show that Claimant was active in swimming, exercising, and caring for others, which tends to undercut the reliability of his conclusions that Claimant cannot lift more than 10 pounds, cannot stand/walk more than 4 fours in an 8-hour workday, needs 20-minute rest periods hourly, and would be frequently absent from work. Likewise, his notes also show that Claimant had good and sustained improvement in her knee pain. It does not appear that he found her to have any gait abnormality, range of motion deficit, or weakness relative to the left knee. As such, there is limited support for his opinions that Claimant can never climb, crouch, kneel, or crawl. In fact, Claimant can climb, which she does several times per week climbing the ladder out of the pool when swimming. The evidence also fails to support the environmental restrictions he identified. Claimant has no medically determinable impairments that necessitate a need to avoid all exposure to chemicals, dust, fumes, humidity, or vibration. It is

8

>also noted that Dr. Crump's opinions as indicated in the questionnaire appear to be based primarily on Claimant's own subjective reports at her office visit on September 7, 2016 where she requested disability forms (see Exhibit 9F at page 6). This office visit was more than five months after the expiration of her date last insured. At that office visit, she reported migraines 4-6 times per month[] lasting 24-72 hours (Id.). However, the medical evidence does not document that Claimant was experiencing migraines of such frequency and duration during the alleged period of disability prior to the date last insured. On the contrary, at her office visit on March 5, 2016, she reported averaging only 2-4 migraines per month (see Exhibit 6F at page 72). Similarly, whereas she told Dr. Crump in September 2016 that her knee pain limited her to standing/walking only 15 minutes at a time (Exhibit 9F at page 6), earlier records show that her knee was doing well until she experienced an exacerbation of pain in May 2016 while caring for her mother (see Exhibit 6F at page 77). She did not even report knee pain at her health maintenance exam in August 2015 (see Id. at pages 52-53). Instead, she said that her knees were "doing very well" (Id. at page 53). Thus, Dr. Crump's opinions were likely based on Claimant's own subjective reports at the September 2016 office visit, not his own medical judgment of Claimant's functional abilities over time and especially prior to her date last insured of March 31, 2016.

(TR 25-26.) The ALJ gave "some weight" to Dr. Crump's opinion and incorporated only one of the limitations assessed by Dr. Crump, occasional balancing, into Plaintiff's RFC. (*Compare* TR 21 *with* TR 25.)

Plaintiff argues that the ALJ's RFC finding is more consistent with giving "no weight" rather than "some weight" to Dr. Crump's opinion. (Docket no. 13 at 18.) She also argues that aside from the physical limitations resulting from her knee pain and obesity, the ALJ provided little rationale for discounting or failing to adopt the migraine-related limitations assessed by Dr. Crump. (*Id*. at 18-19.) In this regard, Plaintiff challenges the ALJ's finding that Plaintiff was only experiencing migraine headaches at a frequency of two to four per month during the alleged disability period, rather than the four to six times per month as Dr. Crump reported. (*Id*. at 19.) Plaintiff also argues that the ALJ's RFC assessment does not include limitations related to the triggers of her migraines (bright lights, stress, and weather changes), which were noted by Dr. Crump and two other doctors. (*Id*. at 19-20.) Plaintiff argues that remand is warranted to address

9

the inconsistencies in the ALJ's analysis. (*Id*. at 20.) Plaintiff further argues in her reply brief that the ALJ did not properly address the regulatory factors or provide good reasons for discounting Dr. Crump's opinion in accordance with the treating physician rule. (Docket no. 19 at 1-5.)

Here, the ALJ did indeed meet the requirements of the treating physician rule by considering and discussing the relevant regulatory factors in assessing Dr. Crump's opinion. For example, the ALJ discussed Dr. Crump's "specialization" and the nature of his treatment relationship with Plaintiff when he mentioned that Dr. Crump was Plaintiff's primary care physician. He discussed the length of their treatment relationship and the frequency of examination when he noted that Dr. Crump treated Plaintiff on a number of occasions during the alleged disability period prior to the date last insured and thereafter. The ALJ also considered and discussed the supportability of Dr. Crump's opinion and its consistency with the record as a whole when he provided specific reasons and cited certain evidence in discounting each of the functional limitations assessed by Dr. Crump. Notably, the ALJ acknowledged Dr. Crump's assertion that routine physical activity made Plaintiff's headaches worse. He then pointed out Dr. Crump's treatment notes, which showed that Plaintiff was actively engaged in swimming, exercising, and caring for others. On this basis, the ALJ reasonably determined that Dr. Crump's own treatment notes reflecting Plaintiff's physical activity level were inconsistent with the functional limitations that Dr. Crump assessed – that Plaintiff could not lift more than 10 pounds or stand and walk for more than two hours, needed 20-minute rest periods hourly, and would be frequently absent from work.

The ALJ also reasoned that the record evidence did not support the environmental limitations assessed by Dr. Crump. He further reasoned that the frequency and duration of Plaintiff's migraines reported by Dr. Crump were not supported by the medical evidence but

10

instead seemed to be a reflection of Plaintiff's own subjective complaints. Indeed, as the ALJ pointed out, Dr. Crump's stated frequency and duration of Plaintiff's migraines mirror the statements Plaintiff made regarding the same at her September 7, 2016 office visit. (*Compare* TR 587 *with* TR 591.) The Sixth Circuit has repeatedly upheld an ALJ's decision to discount a treating physician's opinion that appears to be based on a claimant's subjective complaints, without sufficient support from objective medical data. *See Warner v. Comm'r of Soc. Sec.,* 375 F.3d 387, 391 (6th Cir. 2004); *Tate v. Comm'r of Soc. Sec.*, 467 F. App'x 431, 433 (6th Cir. 2012); *Poe v. Comm'r of Soc. Sec.,* 342 F. App'x 149, 156 (6th Cir. 2009). The ALJ therefore properly discounted Dr. Crump's opinion based on its lack of supportability. Additionally, the ALJ properly discounted Plaintiff's subjective complaints, as further discussed below.

Plaintiff argues that the ALJ's RFC analysis is inconsistent because he assigned "some weight" to Dr. Crump's opinion but only adopted one of the functional limitations assessed by Dr. Crump. Plaintiff asserts that remand is warranted on this basis. But Plaintiff cites no authority to support the contention that an ALJ must adopt a certain number or percentage of functional limitations assessed by a treating physician when he assigns that treating physician's opinion "some weight," and the Court finds none. Plaintiff's argument fails in this regard.

Plaintiff also argues that the ALJ improperly discounted Dr. Crump's report regarding the frequency of Plaintiff's migraines. As discussed above, however, the ALJ properly discounted this portion of Dr. Crump's opinion because it seemed to be based on Plaintiff's subjective complaints made six months after the date last insured. Plaintiff argues, though, that she kept a headache calendar from January 2015 to July 2016, which reflects that she had an average of eight migraine days per month. (Docket no. 13 at 19 (citing TR 584-85).) But the ALJ also reasoned that the medical evidence did not document that Plaintiff was experiencing migraines at an average

11

rate of four to six per month, and as an example, he pointed out Plaintiff's own report that she was averaging only two to four migraines per month at a March 5, 2016 office visit with Dr. Crump. (TR 26.) Also, in response to Plaintiff's argument, Defendant provides additional examples of times when Plaintiff reported fewer than four migraines per month. (Docket no. 16 at 10 (citing TR 230 (February 2013: "occasional migraine . . . [h]eadaches variable, sometimes two a month or so"), 259 (November 2014: "usually gets 2-3 [migraine] headaches a month"), 320-21, 324-25 (reporting 2-3 migraines between monthly office visits from July 2014 to January 2015).) The ALJ's analysis and determination regarding the frequency of Plaintiff's migraines is therefore supported by substantial evidence.

Plaintiff also argues that the ALJ provided little rationale for discounting or failing to adopt the migraine-related limitations assessed by Dr. Crump related to the triggers of her migraines, *i.e.,* bright lights, stress, and weather changes. But while Dr. Crump noted these triggers, he did not explicitly opine that Plaintiff must avoid them. In the portion of his opinion in which he estimated Plaintiff's functional limitations, Dr. Crump checked boxes next to items or obstacles that Plaintiff must avoid; bright lights, stress, and weather changes were not among those listed, nor did Dr. Crump write these additional items in the box marked "other." (*See* TR 588-89.) Plaintiff correctly points out that two other doctors, James R. Weintraub, D.O., and Charles Schultz, M.D., also noted these triggers. (Docket no. 13 at 20.) But they noted the triggers in the "HPI" or "history of present illness" portion of their treatment notes. (TR 579, 600.) And statements that appear in the "history of present illness" section are "merely the narrative description of plaintiff's subjective complaints and symptoms and are not opinions regarding plaintiff's limitations or restrictions." *McCready v. Comm'r of Soc. Sec.*, No. 10-13893, 2012 WL 1060088, at *8 (E.D. Mich. Mar. 2, 2012), *report and recommendation adopted*, No. 10-13893,

12

2012 WL 1059747 (E.D. Mich. Mar. 29, 2012). Notably, neither Dr. Weintraub nor Dr. Schultz assessed functional limitations related to these triggers elsewhere in those treatment notes. The medical evidence cited by Plaintiff does not reflect an assessment of functional limitations related to the triggers of her migraines.

As discussed above, the ALJ expressly discounted each of the limitations assessed by Dr. Crump that he did not adopt, and he provided good reasons for doing so. The ALJ's decision is sufficiently specific in this regard. Moreover, the state-agency physician, Milagros Flores, M.D., considered Plaintiff's migraines along with Plaintiff's other impairments and determined that Plaintiff had an RFC for a limited range of light work. (TR 66-68.) The ALJ assigned great weight to Dr. Flores's opinion and assessed a substantially similar RFC. (*Compare* TR 67 *with* TR 21.) Significantly, Dr. Flores expressly determined that Plaintiff did not have visual or environmental limitations. (TR 67.) The ALJ's RFC assessment is therefore supported by substantial evidence. Plaintiff's Motion should be denied with regard to this issue.

> 2. *The ALJ's Assessment of Plaintiff's Statements Concerning the Intensity, Persistence, and Limiting Effects of the Symptoms Related to her Migraines*

Next, Plaintiff argues that while the ALJ appeared to find credible the existence of Plaintiff's "significant, longstanding, migraine headaches" and that she experienced those migraines at the rate of two to four per month, the ALJ's RFC assessment does not reflect the effects of her migraines at that frequency. (Docket no. 13 at 21-22.) She argues that this is because the ALJ improperly evaluated her activities of daily living and response to treatment. (*Id*. at 22-26.)

"[A]n ALJ's findings based on the credibility of the applicant are to be accorded great weight and deference, particularly since an ALJ is charged with the duty of observing a witness's demeanor and credibility." *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 531 (6th Cir. 1997).

13

But these assessments are not insulated from judicial review. Despite the deference that is due, such a determination must nevertheless be supported by substantial evidence. *Id.* An ALJ's evaluation of an individual's symptoms must contain "specific reasons . . . be consistent with and supported by the evidence, and be clearly articulated so the individual and any subsequent reviewer can assess how the adjudicator evaluated the individual's symptoms." SSR 16-3p, Titles II & XVI: Evaluation of Symptoms in Disability Claims, 2016 WL 1119029, at * 9 (S.S.A. Mar. 16, 2016). "It is not sufficient . . . to make a single, conclusory statement that 'the individual's statements about his or her symptoms have been considered' or that 'the statements about the individual's symptoms are (or are not) supported or consistent.'" *Id.*

Further, to the extent that the ALJ found that Plaintiff's statements are not substantiated by the objective medical evidence in the record, the Regulations explicitly provide that "we will not reject your statements about the intensity and persistence of your pain or other symptoms or about the effect your symptoms have on your ability to work solely because the available objective medical evidence does not substantiate your statements." 20 C.F.R. §§ 404.1529(c)(2), 416.929(c)(2). The ALJ will consider: (1) the claimant's daily activities, (2) the location, duration, frequency, and intensity of the claimant's pain or other symptoms, (3) precipitating and aggravating factors; (4) the type, dosage, effectiveness, and side effects of any medication taken to alleviate pain or other symptoms, (5) treatment, other than medication, for symptom relief, (6) any measures used to relieve the symptoms, and (7) functional limitations and restrictions due to the pain or other symptoms. 20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3); SSR 16-3p; *see also Felisky v. Bowen*, 35 F.3d 1027, 1039-40 (6th Cir. 1994) (applying these factors).

In this case, the ALJ considered and discussed Plaintiff's hearing testimony and her other subjective complaints in conjunction with the record evidence, and the ALJ found that Plaintiff's

14

statements concerning the intensity, persistence, and limiting effects of her symptoms were "not entirely consistent with the medical evidence." (TR 23.) The ALJ reasoned that Plaintiff's activities of daily living did not support a finding that her combined impairments were disabling and that her response to treatment weighed against a finding of disability. (TR 24-25.) Specifically, the ALJ noted that despite Plaintiff's allegedly severe migraines and knee and back pain, she reported in June 2014 and August 2015 that she was exercising 20 minutes per day and swimming regularly. (TR 24.) The ALJ reasoned that Plaintiff's ability to exercise and swim regularly suggested that her migraines would not have prevented her from sustaining full-time employment at the light exertional level. (TR 24.) With regard to Plaintiff's treatment, the ALJ acknowledged that Plaintiff did not achieve full relief of her migraines through multiple attempts with prophylactic and abortive measures and participation in a study of trial injectable medication. (TR 24.) The ALJ also noted, however, that Plaintiff was often able to control her migraines at the onset with the use of narcotics and that she admitted to a decrease in the frequency, duration, and severity of her migraines with the study medication. (TR 24.)

Plaintiff argues that her "intermittent" exercise and swimming activity does not correlate with the frequency of her headaches or non-disability. (Docket no. 13 at 22.) She also argues that the ALJ did not recognize the fact that Plaintiff had good and bad days as a result of her migraines and that her activities are limited on the bad days. (*Id*. at 22-23.) Plaintiff further argues that the ALJ cherry-picked the evidence by failing to note that Plaintiff reported a "bad month with migraines" in the same treatment note in which she reported her exercise activity. (*Id*. at 23.) Plaintiff's argument fails, for a few reasons. First, "it is well settled that '[a]n ALJ can consider all the evidence without directly addressing in his written decision every piece of evidence submitted by a party.'" *Kornecky v. Comm'r of Soc. Sec.,* 167 F. App'x 496, 507-08 (6th Cir.

2006) (quoting *Loral Def. Sys.-Akron v. N.L.R.B.,* 200 F.3d 436, 453 (6th Cir. 1999)). Also, the ALJ did explicitly consider Plaintiff's good and bad days by noting Plaintiff's testimony that on good days, she could take care of herself, do housework and read. (TR 22.) Moreover, the ALJ's decision is based on Plaintiff's treatment notes, which reflect Plaintiff's self-reported ability to participate in regular, sustained exercise activity, despite the frequency of her migraines. (*See* TR 242-23; 487.) Furthermore, the ALJ did not rely solely on Plaintiff's activities of daily living to discount her complaints of allegedly disabling symptoms; he also relied on her response to treatment.

With regard to her treatment, Plaintiff argues that the improvement she experienced during the medication study was not sustained, and her migraines were not fully controlled. (Docket no. 13 at 23-24.) She argues that "even at best control, she was still experiencing headaches two to three times per month." (*Id.* at 24.) As discussed above, however, the ALJ explicitly acknowledged that Plaintiff never experienced full relief of her migraines; he also acknowledged Plaintiff's report of having migraines about 2-4 times per month, and he found that she was nevertheless able to perform a limited range of light work. (TR 23, 24, 26.)

In discounting Plaintiff's subjective complaints based on Plaintiff's response to treatment, the ALJ cited an August 25, 2015 treatment note, in which Dr. Crump reported that most of Plaintiff's headaches were controllable with narcotics. (TR 24 (citing TR 486-87).) Plaintiff argues that her hearing testimony that Norco and Naproxen only brought her pain level down from a 10/10 to an 8-9/10 reflects the true control of her headaches with narcotics. (Docket no. 13 at 25.) Plaintiff's testimony, however, is inconsistent with Dr. Crump's treatment note, and the ALJ properly discounted Plaintiff's testimony on this basis.

16

Here, the ALJ considered and discussed Plaintiff's reports of two to four migraines per month (TR 23, 26); the treatment Plaintiff used to relieve her symptoms, including narcotics, prophylactic medication, darkness, and use of a cold pack (TR 22, 23, 24, 25); and the reported triggers of her migraines – bright lights, weather changes, stress (TR 25); and he found that Plaintiff's subjective complaints of disabling symptoms were inconsistent with her self-reported ability to exercise regularly despite the frequency of her migraines and her ability to control her migraines with narcotics as reported by her treating physician.  Therefore, the ALJ applied the factors set forth in 20 C.F.R. § 404.1529(c)(3) and set forth legitimate reasons for discrediting Plaintiff's hearing testimony and subjective complaints in his decision, which reasons are properly supported by the record evidence in accordance with SSR 16-3p.  Thus, the ALJ's decision is sufficiently specific to make clear to Plaintiff and to the court how he evaluated the alleged effects of Plaintiff's migraines.  The ALJ's assessment of Plaintiff's subjective complaints is supported by substantial evidence and should not be disturbed.

## VI.     CONCLUSION

For the reasons stated herein, the court should **DENY** Plaintiff's Motion for Summary Judgment (docket no. 13) and **GRANT** Defendant's Motion for Summary Judgment (docket no. 16).

**REVIEW OF REPORT AND RECOMMENDATION**

Either party to this action may object to and seek review of this Report and Recommendation, but must act within fourteen (14) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1) and E.D. Mich. LR 72.1(d)(2).  Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health and Human Servs.*, 932 F.2d 505 (6th Cir. 1991); *United States v. Walters*, 638

F.2d 947 (6th Cir. 1981). Filing objections which raise some issues but fail to raise others with specificity will not preserve all objections that a party might have to this Report and Recommendation. *Willis v. Sec'y of Health and Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to Rule 72.1(d)(2) of the *Local Rules of the United States District Court for the Eastern District of Michigan*, a copy of any objection must be served upon this Magistrate Judge.

Within fourteen (14) days of service of any objecting party's timely filed objections, the opposing party may file a response. The response shall be not more than five (5) pages in length unless by motion and order such page limit is extended by the Court. The response shall address specifically, and in the same order raised, each issue contained within the objections.

Dated: February 1, 2019	s/ Mona K. Majzoub
	MONA K. MAJZOUB
	UNITED STATES MAGISTRATE JUDGE

**PROOF OF SERVICE**

I hereby certify that a copy of this Report and Recommendation was served upon counsel of record on this date.

Dated: February 1, 2019	s/ Leanne Hosking
	Case Manager